UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,            **REPORT, RECOMMENDATION and ORDER**

v.

DIJON HARRIS,            14-CR-00177-RJA-JJM

                   Defendant.

---

## INTRODUCTION

Defendant Dijon Harris is charged in a four-count Indictment with possession of heroin with intent to distribute, in violation of 21 U.S.C. §841(a)(1), maintaining a drug-involved premises, in violation of 21 U.S.C. §856(a)(1), and firearm offenses. Indictment [1].[1] The charges against Harris arise from a September 5, 2014 search warrant issued by New York State Supreme Court Justice Timothy Drury for Harris's residence at 335 Hewitt Avenue, Buffalo, New York. The warrant was supported by the *in camera* testimony of a confidential source ("CS").

This case was referred to me by Hon. Richard J. Arcara for supervision of all pretrial proceedings. September 26, 2014 Text Order of Referral. Before me are Harris's motions for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978) ([53], ¶4), and for disclosure of certain redacted portions of the CS's testimony [39].[2] Oral argument was held on March 15, 2016 [64]. For the following reasons, Harris's motion for disclosure of certain

---

[1]     Bracketed references are to the CM/ECF docket entries.

[2]     Harris has had a succession of attorneys. Each of his three attorneys filed pretrial motions [17, 25, 39, 53] seeking a variety of other relief. However, at the March 15, 2016 oral argument, Harris requested that as a preliminary matter I only rule on the current motions to facilitate a possible pretrial resolution of this action. Over the government's objection, I agreed to do so.

redacted portions of the CS's testimony is denied, and I recommend that his motion for a <u>Franks</u> hearing also be denied.

**BACKGROUND**

The search warrant for 335 Hewitt Avenue was supported by the affidavit of Timothy Donovan, a Detective with the Erie County Sheriff's Department, stating that he "had received information from a [CS] . . . that Dijon Harris is selling and storing quantities of heroin from his residence located at 335 Hewitt Avenue. The CS has purchased heroin from Harris at his residence within the past ten . . . days . . . . On 09/05/14 the [CS] was driven on Hewitt Avenue and did point out 335 Hewitt Avenue . . . as the target residence . . . . [and] did also positively identif[y] a booking photograph depicting Dijon Harris". [17], p. 23 of 40, ¶¶2(a), (b). Detective Donovan's affidavit stated that his application was further supported by the CS's *in camera* testimony provided to Justice Drury on September 5, 2014. The government has produced a redacted transcript of that testimony [51-1] to Harris and an unredacted copy [52] for my *in camera* review.

The redacted transcript reflects that when asked by Justice Drury why he/she was helping the police, the CS testified "I got myself into trouble [(a misdemeanor)], just trying to help myself out". [51-1], p. 3. At that point, Justice Drury reminded the CS that "misdemeanors [are] punishable by a year in jail, you lie it could be seven years in jail" (<u>id</u>.).

The CS testified that he/she purchased heroin from Harris on one occasion to sell (<u>id</u>., p. 4). The CS had never previously been to 335 Hewitt to buy heroin and learned that Harris sold heroin from friends (<u>id</u>., p. 5). When asked if he/she had any prior experience with heroin before the purchase from Harris, the CS testified "I've seen people use and stuff before, I've never really like dealt with it myself too much, but I've seen people use it" (<u>id</u>., pp. 5-6).

The CS testified that "I was under the indication that he takes trips to New York and buys a hundred thousand dollars' worth of heroin . . . . [H]e had no problem with me coming back, he really didn't check me out too much either, he was pretty comfortable . . . . [H]e didn't ask too many questions. He just did some heroin and sold me some" (id., p. 5). Harris told the CS, "anytime I wanted to, I just come back, just call him" (id., p. 6).

The CS described that when he was at 335 Hewitt Avenue, "I seen . . . a big block of heroin, it was off-white . . . I seen a couple of guys in there taking straws using it, snorting some up . . . then he broke off a rock, packaged it up, and gave it to me" (id., p. 8). Justice Drury then placed Detective Donovan under oath, and asked him "are you surprised by this description of a block of heroin?" (id., p. 10). In response, Detective Donovan testified, "No, I am not . . . . Especially an off-white type . . . there's some heroin out there called white china . . . that has that tint to it . . . it's commonly found in New York City" (id.).

## ANALYSIS

A.   **Motion for a Franks Hearing**

"The standard for entitlement to a Franks hearing is high". United States v. Fernandes, 50 F. Supp. 3d 398, 403 (W.D.N.Y. 2014) (Wolford, J.). A defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause". Franks, 438 U.S. at 155-56. "Franks does not require that all statements in an affidavit be true; it simply requires that the statements be 'believed or appropriately accepted by the affiant as true.'" United States v. Campino, 890 F.2d 588, 592 (2d Cir. 1989) (*quoting* Franks, 438 U.S. at 165).

"The deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any nongovernmental informant." Franks, 438 U.S. at 171. Thus, "even if [the informant's] information was false, [the defendant must] present . . . evidence that officers knew or were recklessly unaware of its falsity when they obtained the challenged warrant". United States v. Donald, 417 Fed. App'x 41, 43 (2d Cir. 2011) (Summary Order). See United States v. Wapnick, 60 F.3d 948, 956 (2d Cir.1995) ("As a general rule," if an informant made a false statement to an affiant, "that does not present grounds to challenge the search warrant so long as the affiant in good faith accurately represents what the informant told him"); United States v. Hennings, 1997 WL 714250, *6 (W.D.N.Y. 1997) (Arcara, J./Heckman, M.J.) ("under Franks, defendant must show that Agent McFeely knew that CS # 3's statements were false, or that he exhibited reckless disregard as to their truthfulness").

Harris's argument that the CS provided false information to Justice Drury centers on his allegation that he was in New York City at the time of the alleged sale to the CS. Cantwell Affirmation [53], ¶4. In support of that argument, he relies on letters from his family members attesting that Harris was in New York City during the relevant period [53-1]. In response, the government argues that the family's alibi contradicts Harris's post-arrest statements and vehicle rental records. Government's Response [54], pp. 2-3.

However, I need not resolve this issue, since even if the CS provided false information to Justice Drury, Harris must also establish that Detective Donovan knew or was recklessly unaware that it was false. Nothing in the record before me indicates that Detective Donovan knew or would have had any reason to know that the CS was providing false information to Justice Drury. See United States v. Harper, 2006 WL 2873662, *8 (W.D.N.Y. 2006) (Larimer, J./Payson, M.J.) ("although [defendant] summarily challenges the credibility of

the confidential informant, he has not submitted any evidence to suggest that [the affiant police officer] was aware of any alleged falsity at the time she drafted the affidavit or that she disregarded obvious reasons to doubt the accuracy of the information provided by the informant"). While there were some discrepancies[3] in the testimony of the CS, that is "not enough to constitute the '*substantial* preliminary showing' of falsity necessary to justify a Franks hearing". United States v. Morris, 509 Fed. App'x 58, 61 (2d Cir. 2013) (Summary Order) (emphasis in original).

The CS "appeared before Judge Drury, Judge Drury questioned [her/him] under oath and therefore, Judge Drury was able to make his own, independent determination as to the reliability of the information supplied by the [CS]". United States v. Glover, 2010 WL 3608045, *6 (W.D.N.Y. 2010) (Schroeder, M.J). Detective Donovan also corroborated at least some of the CS's information by having the CS identify Harris from a booking photograph and identify 335 Hewitt Avenue during a drive-by. Donovan Affidavit [17], ¶2(a). He also testified that the CS's description of there being an off-white block of heroin at Hewitt's residence was credible and consistent with the CS's understanding that Harris was receiving heroin from New York City. Redacted transcript [51-1], pp. 5, 10.

For the first time at oral argument, Harris pointed to Detective Donovan's failure to substantiate the CS's information by conducting a controlled buy as establishing his entitlement to a Franks hearing. "What is notably missing from this argument is any evidence that the allegations of the affidavit are false. It consists solely of speculation that if the affidavit were true, the police would have conducted further investigation (such as a controlled buy) and

---

[3] For example, when the CS was asked in sequence both whether Harris was "a little bit husky" and "not husky" – he/she answered "yes" to both. [51-1], p. 2. However, apparently recognizing that the responses were incongruous, Justice Drury promptly reminded the CS that he/she had "to be one hundred percent truth[ful] or it could be perjury, and if it is perjury, it could be seven years in jail" (id.).

included more information in the affidavit, even though additional investigation and more detail in the affidavit were not necessary for a lawful search." United States v. Long, 774 F.3d 653, 662 (10th Cir. 2014) cert. denied, __ U.S.__, 135 S. Ct. 2068 (2015) (emphasis in original). *See* United States v. Johnson, 580 F.3d 666, 671 (7th Cir. 2009) ("That the police could have done more work does not meet the high standard for requiring a Franks hearing"); United States v. Miller, 2013 WL 3353917, *16 (N.D. Ill. 2013) ("Miller's misgiving about Officer Rivera's failure obtain more information or corroborate the informant's claim are not sufficient to obtain a Franks hearing").

Therefore, based on the record before me, I recommend that Harris's motion for a Franks hearing be denied.

**B.      Motion for Access to Certain Redacted Portions of the CS's Testimony.**

To aid in establishing his entitlement to a Franks hearing, Harris seeks certain redacted portions of the CS's *in camera* testimony. *See* Cantwell Affirmation [53], ¶4. Harris conceded at the March 15, 2016 oral argument that he was not seeking the identity of the CS. *See also* Harris's Reply [34] ("The defense has no difficulty with the government removing the informant's name and/or address, and/or any other identifying features"). Instead, he seeks the "street name" that the CS used to identify him, the amount of heroin purchased and the dollar amount (transcript of the CS's testimony [51-1], p. 4), how the CS learned that Harris sells heroin (id., p. 5), the redacted section at pages 6-7 of the transcript, the CS's identification of the individual that resides at 335 Hewitt Avenue (id., p. 8), and the date the CS purchased heroin from Harris (id., p. 3). Humann Affirmation [39], ¶¶3-7; Cantwell Affirmation [53], ¶4.

The redaction of information which would identify the confidential informant "is entirely appropriate." Glover, 2010 WL 3608045, *11. Having reviewed *in camera* the unredacted transcript of the CS's testimony [52], I conclude that the redacted sections Harris seeks could be used to identify the CS (or at least significantly narrow the slate of possible individuals).

While much of Harris's Franks argument centers on whether he was in New York City at the time of the heroin sale identified by the CS, "the redaction of the date [of that transaction] is entirely appropriate in light of the fact that to reveal the date of the purchase would be tantamount to revealing the identity of the confidential informant". Glover, 2010 WL 3608045, *11. Nor, as discussed above, would the disclosure of that information advance Harris's Franks argument.

Harris also argues that the redaction of his "street name" from the CS's testimony renders him "unable to argue the truthfulness of that statement". Cantwell Affirmation [53], ¶4. Again, Harris's entitlement to a Franks hearing does not hinge on whether the CS's testimony was false, but rather on whether Detective Donovan knew or should have known that the CS's testimony was false, and Harris has not shown that he requires disclosure of the redacted portions of the transcript for that purpose. Therefore, the motion is denied.

**CONCLUSION**

For these reasons, Harris's motion for disclosure of certain redacted portions of the CS's testimony [39] is denied, and I recommend that Harris's motion for a Franks hearing ([53], ¶4) also be denied. Unless otherwise ordered by Judge Arcara, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by April 7, 2016

(applying the time frames set forth in Fed. R. Crim. P. ("Rules") 45(a)(1)(C), 45(c), and 59(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(c)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(c)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: March 21, 2016

   /s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge