UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

DIJON HARRIS,

                        Defendant.

**DECISION AND ORDER**
14-CR-177-RJA

        Defendant Dijon Harris has filed a *pro se* motion (Dkt. No. 236) for a sentence

reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  He is serving a 175-month

aggregate sentence of incarceration (Dkt. No. 233), imposed on May 17, 2021,

following his guilty plea to one count of possession of 28 grams or more of cocaine

base with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and

one count of possession of firearms in furtherance of drug trafficking, in violation of

18 U.S.C. § 924(c)(1)(A)(i).  The Government has filed a response in opposition

(Dkt. Nos. 238, 240), and Defendant has filed reply papers (Dkt. No. 241).

Defendant later filed a letter to the Court (Dkt. No. 242) asking that the Court accept

the letter as a supplement to his motion, which the Court has considered herein.

        Defendant, who is 56 years old, is housed at Allenwood Medium Federal

Correctional Institution ("FCI Allenwood"), with a projected release date of February

8, 2027.[1]  Defendant asks in his initial motion papers that the Court reduce his

---

[1] *See Inmate Locator*, Register Number: 23723-055, Federal Bureau of Prisons,
https://www.bop.gov/inmateloc/ (last visited Apr. 6, 2023).

sentence to time-served.  In his reply papers and supplemental filing, Defendant requests that the Court immediately release him or, in the alternative, reduce his sentence or release him to a period of home confinement, home detention, or "[h]ouse arrest," with any conditions deemed necessary by the Court, which may include location monitoring.  For the reasons that follow, Defendant's motion for a sentence reduction under the compassionate release statute is DENIED.

## **DISCUSSION**

Under the compassionate release statute, the Court may "reduce the term of imprisonment and impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment."  18 U.S.C. § 3582(c)(1)(A).  It is a defendant's burden to show that he or she is entitled to a sentence reduction under the compassionate release statute.  *See United States v. Jones*, 17 F.4th 371, 375 (2d Cir. 2021) (per curiam). "A district court has broad discretion when considering a motion for compassionate release."  *United States v. Halvon*, 26 F.4th 566, 569 (2d Cir. 2022) (per curiam).

Preliminarily, the Government concedes that Defendant has satisfied the exhaustion requirement and that the Court may therefore determine the motion on the merits.  *See* Dkt. No. 238, p. 6; *see also* Dkt. No. 238, pp. 23-26 (copy of Defendant's November 3, 2022 request to the Warden of FCI Allenwood, and the Warden's December 9, 2022 denial); Dkt. No. 236, pp. 14-16 (duplicate of November 3, 2022 request).

I.      **Extraordinary and Compelling Circumstances**

The Second Circuit has agreed with the majority position of "district courts

across the country" that "the First Step Act freed district courts to exercise their

discretion in determining what are extraordinary circumstances." *United States v.*

*Brooker*, 976 F.3d 228, 234 (2d Cir. 2020). Indeed, "[t]he only statutory limit on what

a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . .

alone shall not be considered an extraordinary and compelling reason.'" *Id.* at 237-

238 (emphasis in original), quoting 28 U.S.C. § 994(t).

Defendant's primary argument for a sentence reduction is that his age and

medical conditions (*i.e.*, diabetes, hypertension, high cholesterol, and obesity,

"among other things") subject him to an increased risk of severe consequences from

a COVID-19 infection, despite being fully vaccinated. Defendant expresses his

concerns about possible variants and subvariants of the virus that may evade

vaccine-induced immunity.

The Government supplied an under-seal copy of Defendant's medical records

as Exhibit B (Dkt. No. 240) to its response papers. The Court has carefully reviewed

that submission and concludes that Defendant has several high-risk medical

conditions with respect to COVID-19, to include Type 2 diabetes, obesity, self-

reported former smoker, and high blood pressure (the CDC notes high blood

pressure "possibly . . . can make you more likely to get very sick from COVID-19).[2]

---

[2] *See COVID-19: People with Certain Medical Conditions*, Centers for Disease Control and
Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-
medical-conditions.html (updated Feb. 10, 2023); *see, e.g.*, Dkt. No. 240, pp. 102-103 (2021
blood pressure readings were 145/88, 145/88, 126/71, 150/82, 146/87, 151/97, and 140/90, and

Curiously, the Government concedes only one of these high-risk conditions in its opposition papers, *i.e.*, obesity.  In any event, upon the Court's review of the records, it is apparent that FCI Allenwood is monitoring and treating Defendant's medical conditions.  Indeed, most Defendant's medical records pertain to his complaints about various orthopedic problems, not about these high-risk conditions.[3]

Defendant is currently 56 years old.  As explained by the Centers for Disease Control and Prevention ("CDC"), "[o]lder adults (especially those aged 50 years and older) are more likely than younger people to get very sick from COVID-19"; however, the CDC continues, "[m]ost COVID-19 deaths occur in people older than 65."[4]  Thus, while Defendant's age is certainly a factor the Court may consider, he does not fall within the most concerning age bracket with respect to COVID-19.

---

Defendant's height is 71 inches [5 foot 11 inches] and weight has been measured at 241 pounds [BMI 33.6], 241 pounds [BMI 33.6], 235 pounds [BMI 32.8], and 237 pounds [BMI 33.1] in 2021); *see also Healthy Weight, Nutrition, and Physical Activity: Assessing Your Weight: Adult BMI Calculator*, Centers for Disease Control and Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Apr. 6, 2023); Dkt. No. 240, p. 121-122 (listing Current Health Problems to include Type 2 diabetes mellitus and essential (primary) hypertension), pp. 135-139 (Medication Summary); Dkt. No. 236, p. 11 (Defendant self-reported an "80 pack year smoking history which he quit 8 years ago").  Defendant appears to have developed diabetes during his term of incarceration.  *Compare* Dkt. No. 230 (Presentence Investigation Report), ¶¶ 92-93 (diabetes not listed as a physical condition).

[3] Defendant sustained a spinal injury and torn left rotator cuff in a 2012 motor vehicle accident. He underwent rotator cuff repair surgery in 2013, but a later MRI showed a rotator cuff tear that had retracted.  In addition to shoulder pain, Defendant has also complained of left foot pain after one of his toenails was removed, and pain in his back and low back, shoulder, joints, and muscles.  Other listed medical conditions include osteoarthritis (degenerative joint disease) and neuralgia (nerve pain).

[4] *COVID-19 Risks and Information for Older Adults*, Centers for Disease Control and Prevention, https://www.cdc.gov/aging/covid19/index.html (last reviewed Feb. 22, 2023).

Although Defendant has several high-risk medical conditions, he has been fully vaccinated and has received a booster shot. *See* Dkt. No. 240, p. 129 (Immunizations list), p. 181 (COVID-19 Vaccine Consent form). He has also recovered, according to his medical records, from a January 2022 COVID-19 infection. *See* Dkt. No. 240, pp. 107-113, 123, 144. It is now evident that neither being fully vaccinated nor having recovered from a COVID-19 infection eliminates the risk of contracting COVID-19, as variants have emerged and so-called "breakthrough" infections are commonplace. Even so, "notwithstanding [Defendant]'s well-taken concern about the risks posed by new variants of the virus, the vaccine remains a highly effective means of preventing the most severe effects of COVID-19." *United States v. Hunter*, 21-1773, 2022 WL 2288688, 2022 U.S. App. LEXIS 17420, *4 (2d Cir. 2022) (collecting cases); *see United States v. Raposo*, 98 Cr. 185 (JPC), 2023 WL 142786, 2023 U.S. Dist. LEXIS 4560, *11-12 (S.D.N.Y. Jan. 10, 2023) ("[Defendant] in fact stands at an even lower risk of contracting COVID-19 or suffering serious complications from the virus, given that (1) he is double-vaccinated and boosted . . ., and (2) he already was infected with and recovered from COVID-19") (collecting cases).[5] Of course, should vaccine-resistant variants arise, Defendant could file a subsequent motion for compassionate release.

---

[5] *See Vaccines: Stay Up to Date with COVID-19 Vaccines Including Boosters*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/stay-up-to-date.html (updated Mar. 31, 2023) ("COVID-19 vaccines available in the United States are effective at protecting people from getting seriously ill, being hospitalized, and dying. As with other vaccine-preventable diseases, you are protected best from COVID-19 when you stay up to date with the recommended vaccinations, including recommended boosters.").

In his supplemental papers, Defendant argues that since his COVID-19 infection in January 2022, he has experienced continued symptoms—to include difficulty breathing and walking, urinary incontinence, extreme pain, and unexplained weight loss—that are not adequately reflected in his medical records and that the BOP is not properly treating.  Again, the Court has reviewed Defendant's medical records.  He was deemed asymptomatic when he tested positive for COVID-19, and during his 10-day isolation period after testing positive denied any COVID-19-like symptoms.  *See* Dkt. No. 240, pp. 107-113, 123.  It is noted that he has made some complaints about shortness of breath, generalized pain (including chest pain), and dizziness when standing abruptly.  *See* Dkt. No. 236, p. 11; Dkt. No. 240, p. 121-123.  It is possible that Defendant suffers from what is known colloquially as "long-haul COVID-19."  However, without any records to confirm that diagnosis or to persuade the Court that Defendant's self-reported lingering symptoms are extraordinary and compelling, the Court cannot simply rely on Defendant's assertion that his "medical records [are] a veil to the truth."  Of course, should Defendant's situation change, he could file a new motion for compassionate release.

Defendant also argues that his conditions of confinement have been more punitive than the Court anticipated at his sentencing due to pandemic-related lockdowns and isolation in response to COVID-19 outbreaks at FCI Allenwood (including an alleged recent outbreak, according to his March 27, 2023 filing).  It bears noting that Defendant was sentenced on May 17, 2021, months after COVID-19 vaccines first became available in the United States and about 14 months after the President declared a national emergency concerning the COVID-19 pandemic.

6

Thus, at that point the Court was aware of the challenges faced by jails and federal correctional facilities in responding to COVID-19 events. This is not to discount the difficulties Defendant has presumably dealt with during waves of infection, but to distinguish Defendant's circumstance from those of defendants who were sentenced pre-pandemic.

Aside from Defendant's health- and pandemic-related concerns, Defendant argues that he has received no disciplinary infractions during his term of incarceration, and he has rehabilitated himself and is willing to change his prior lifestyle. He further argues his release plan is viable and he has served a majority of his sentence of incarceration. Thus, Defendant's remaining reasons for a sentence reduction largely surround his rehabilitation, yet rehabilitation alone cannot equate to an extraordinary and compelling reason for compassionate release. *See Brooker*, 976 F.3d at 237-238.

To be sure, Defendant's commitment to bettering himself during his period of incarceration is commendable. Defendant has taken several education courses, obtained his General Education Diploma, and participated in therapy. Moreover, Defendant has attached letters to his motion from family members who remain supportive of him, as well as a letter from a fellow inmate. These individuals assert that Defendant has finally reformed. It is obvious to this Court that Defendant continues to have a support system that will prove invaluable to him upon his release. The Court also finds encouraging Defendant's letter (and more recent letter) in which he asserts he has made positive changes in his life and is now a better version of himself. *See* Dkt. No. 236, pp. 28-32; Dkt. No. 242.

Notwithstanding, the Court concludes that the amalgamation of Defendant's reasons for a sentence reduction is not extraordinary and compelling, and he has failed to satisfy this requirement.

## II.    18 U.S.C. § 3553(a) Factors

Even if Defendant had presented extraordinary and compelling reasons, the Court finds that the sentencing factors in 18 U.S.C. § 3553(a) weigh against compassionate release.

Defendant was sentenced in May 2021 to an aggregate 175 months of incarceration (115 months for possession of 28 grams or more of cocaine base with intent to distribute, and 60 months for possession of firearms in furtherance of drug trafficking, to run consecutive to each other), to be followed by 5 years of supervised release (5 years on each count of conviction, to be served concurrently).  *See* Dkt. No. 233 (Judgment); Dkt. No. 234 (Statement of Reasons); Dkt. No. 235 (Sentencing Tr.); CM/ECF Minute Entry, 5/17/2021.

At sentencing, Defendant requested a non-Guidelines sentence of 10 years (120 months), which was the statutory mandatory minimum between the two counts of conviction.  The Court rejected that request but imposed a downward variance to 175 months from the aggregate Guidelines range of 211 to 248 months.[6]  During the sentencing, the Court noted Defendant's "very extensive" criminal history that

---

[6] The drug distribution count had a range of 151 to 188 months, with a statutory mandatory minimum of five years, while the firearms count carried a statutory mandatory minimum of five years' imprisonment to run consecutive to any other term of imprisonment.  In other words, Defendant faced an aggregate 10-year (120-month) mandatory minimum term of incarceration between the two counts of conviction.

commenced at age 17 (resulting in Criminal History Category VI) and its concern about protecting society.  It balanced those concerns against—among other things—Defendant's length of time in pretrial detention and his "very strong" family support. Dkt. No. 235, pp. 10, 13, 15, 29-31.

With respect to offense conduct, upon execution of a search warrant at Defendant's residence, law enforcement recovered large quantities of heroin and crack cocaine, drug paraphernalia, over $120,000 in U.S. currency, four firearms, and ammunition.  Defendant was a convicted felon at the time of his drug distribution.  When law enforcement entered the residence, Defendant fled from them and resisted being handcuffed.  He admitted that the controlled substances he possessed were intended for distribution, and that he had purchased a minimum of 100 grams of heroin at a time from his supplier over the past three years.

Building upon the above, as noted by the Court at the sentencing proceeding, Defendant's criminal history is lengthy and of great concern.  *See generally* Dkt. No. 230, ¶¶ 39-61.  Starting at age 17 and up through age 46, Defendant amassed approximately 20 criminal convictions, five of which were felony convictions.  *See* Dkt. No. 230, ¶¶ 47-50, 53 (robbery [two convictions], criminal possession of a weapon, criminal sale of a controlled substance, and attempted assault).  Among other conduct, he previously discharged a firearm at police officers and assaulted a police officer while resisting arrest.  Moreover, there are numerous prior instances where Defendant's parole was revoked.

Defendant's projected release date is February 8, 2027, approximately 46 months from now.  The Court concludes that the § 3553(a) factors, particularly the

seriousness of the offense, the need to achieve deterrence and to protect the public from further crimes of Defendant, and to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,[7] compel the Court to deny Defendant's motion.  The Court finds that any § 3553(a) factors weighing in Defendant's favor, such as his strong family support (which was a significant factor behind the downward variance the Court granted at sentencing), do not outweigh the other factors counseling denial.

## CONCLUSION

For the foregoing reasons, Defendant's motion for compassionate release (Dkt. No. 236) pursuant to 18 U.S.C. § 3582(c)(1)(A) is DENIED.

---

[7] Defendant reasons that defendants who have committed murder (or multiple murders) have had their sentences reduced to time served on compassionate release motions, and thus this Court should sentence him to time served to avoid a disparity between those sentences and his own sentence.  *See* Dkt. No. 236, p. 5 (listing cases) and Dkt. No. 241, p. 4 (listing cases).  By that logic, any defendant who has served a lengthy sentence during the pandemic and who was not convicted of murder should be released.

This argument also disregards the "broad discretion" district courts have when determining whether a sentence reduction is warranted.  *Halvon*, 26 F.4th at 569.  Defendant's lengthy string cite of cases does little to assist this Court in determining the instant motion.  Indeed, this Court is presented with a unique confluence of factors that may or may not be distinguishable from factors in the cited cases, and this Court may also not be privy to all information considered by the district courts that granted those motions, without access to those defendants' presentence investigation reports.

"[S]entencing disparity is a relevant, but not controlling, sentencing factor . . ., and the weight accorded any sentencing disparity is a matter firmly committed to the discretion of the sentencing judge[.]"  *United States v. Kassar*, 850 Fed. Appx. 815, 817 (2d Cir. 2021) (summary order) (internal quotation marks and citations omitted).

The Court cannot conclude that its decision herein creates a disparity in sentencing.

**IT IS SO ORDERED.**


_\_s/Richard J. Arcara_____
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT


Dated:  April 6, 2023
         Buffalo, New York